IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| United States of America, | Criminal No. 3:17-cr-352-CMC |
|---|---|
| vs. | **OPINION AND ORDER** |
| Yvonne Sanchez, Defendant. | |

This matter is before the court on Defendant's motion for relief under 28 U.S.C. § 2255. ECF No. 76. Defendant argues her counsel was ineffective for several reasons: (1) failing to dispute any of the discovery provided by the Government despite Defendant presenting contradictory information, including her lack of intent to defraud a financial institution; (2) failing to object to miscalculated restitution; (3) failing to object to the calculation of her guidelines and sentence, including time in a halfway house; and (4) failing to provide Defendant options, attempt to negotiate a better sentence, or discuss defenses. *Id.* at 5. The Government filed a response in opposition and motion to dismiss. ECF Nos. 85, 86. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if she failed to respond. ECF No. 87. Defendant filed her reply. ECF No. 90. This matter is ripe for resolution.[1]

## BACKGROUND

On April 18, 2017, Defendant was indicted on forty-one counts of bank fraud in violation of 18 U.S.C. §§ 1344(2), and five counts of wire fraud in violation of 18 U.S.C. § 1343. ECF No.

---

[1] On August 9, 2018, Defendant filed a pro se motion for ruling on her § 2255 motion. ECF No. 93. With the entry of this Order, that motion is moot.

2. Defendant was charged with opening fraudulent business accounts at AllSouth Federal Credit Union and depositing 41 checks payable to her employer's business, EveryWord, Inc., into those accounts. *Id.* at ¶¶ 5, 7. Defendant then withdrew the funds from the business accounts and either deposited them in her personal checking and savings accounts, made cash withdrawals, wired money to individuals in Puerto Rico, or conducted point-of-sale transactions using the accounts. *Id.* at ¶ 7.

Defendant entered into a written plea agreement to plead guilty to one count of bank fraud on September 20, 2017. ECF No. 46. She entered a guilty plea the same day. ECF No. 47. The Presentence Report ("PSR") determined her total offense level to be 14, criminal history category I, with a guideline range of 15-21 months. ECF No. 62 at ¶ 94. Defendant raised an objection to the loss amount in response to the PSR. ECF No. 62-2.

At sentencing on January 24, 2018, Defendant withdrew her objection to the loss amount attributed. ECF No. 66. Defendant was sentenced to 15 months' imprisonment and a five-year term of supervised release. ECF No. 69. She was ordered to pay restitution of $121,461.76. *Id.* Defendant did not appeal her conviction or sentence.

**STANDARD**

The standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that her counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency

2

resulted in actual prejudice to Defendant. *Id.* As to the first prong of the Strickland test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id.* at 687. A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *see also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

Under the second prong of the *Strickland* test, Defendant must establish that she experienced prejudice as a result of counsel's ineffectiveness, meaning that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (internal quotation marks and citation omitted). A defendant must affirmatively prove prejudice that is "so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland*, 466 U.S. at 697).

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence, and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 690-91; *see*

3

*also Buckner v. Polk*, 453 F.3d 195, 201 (4th Cir. 2006) (explaining counsel's conduct is generally presumed to be a reasonable strategic choice). The Fourth Circuit has held that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence . . . would have been produced." *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996).

## DISCUSSION

Defendant alleges her counsel was ineffective in four ways, by failing to: (1) dispute any of the discovery provided by the Government despite Defendant presenting contradictory information, including her lack of intent to defraud a financial institution; (2) object to allegedly miscalculated restitution; (3) object to the calculation of her guidelines and sentence, including time in a halfway house; and (4) provide Defendant options, attempt to negotiate a better sentence, or discuss defenses. The Government argues the bank fraud statute is violated when a person steals from a bank assets that belong to someone else but are entrusted to the bank. ECF No. 86 at 10; *United States v. Adepoju*, 756 F.3d 250, 255 (4th Cir. 2014). It also notes Defendant agreed to "so much of the facts as [the AUSA] has cited to establish the elements of bank fraud." ECF No. 86 at 12; ECF No. 86-1 at 43. The Government contends Defendant's guidelines, sentence, and restitution were calculated correctly, including a sentencing enhancement for being in a position of trust, and notes the objection to loss amount was withdrawn at sentencing. ECF No. 86 at 12-14. Finally, the Government states the "plea offer was the best offer the Defendant would get." *Id.* at 14. For these reasons, it argues, Defendant's counsel was not ineffective.

In her reply, Defendant acknowledges she "admitted in open court that I was guilty," but did so "under the pressure of facing a 30 year sentence and the fact that I trusted my attorney who advised me he would use the information of me not having the intent to set up the accounts as a negotiation tool at sentencing." ECF No. 90 at 2. She alleges her attorney misinformed her regarding halfway house placement, as she was informed the court takes into consideration time in a halfway house when sentencing. She contends her attorney was ineffective in agreeing to the loss amount "unless I could prove something different and I could not." *Id.* She notes "the restitution amount may or may not be correct." *Id.* She also contests many of the facts, and argues the PSR contains information that is incorrect or misleading. *Id.* at 4. Finally, she notes "this may have been the best plea offer available considering that the government did not have all the facts and it was my attorney's responsibility to clarify this [*sic*] facts to the Government" and to the court at sentencing "in an attempt for the Judge to deviate from the guidelines for a lesser sentence." *Id.* She asks the court to credit her restitution and resentence her to home confinement for the duration of her sentence. *Id.* at 5.

*1. Discovery Information*

Defendant alleges her attorney failed to dispute any of the information provided by the Government in discovery, even after she informed him of her lack of intent to open a business account and lack of documentation "representing any ownership or interest in the business." ECF

5

No. 76 at 5. She alleges she did not intend to defraud a financial institution, as shown in part by the fact restitution is owed to a business, not a financial institution. *Id.*

As noted by the Government, case law and Defendant's own statements under oath foreclose this argument. At Defendant's change of plea hearing the court explained the indictment to Defendant, including allegations that Defendant "opened accounts in [EveryWord Inc.'s] name," and "executed knowingly a scheme and artifice to defraud First Community Bank . . . in that you fraudulently transferred money that was in the name of EveryWord at . . . FCB into fraudulent accounts at the All South Federal Credit Union." ECF No. 86-1 at 15-16. Defendant agreed she understood "the nature of the charge contained in Count 1 of [her] indictment." *Id.* at 17. In addition, Defendant admitted, though her attorney, to the facts that established the elements of bank fraud. *Id.* at 43. Defendant admitted "the scheme as described" took place, and that she was "knowingly involved" in that scheme. *Id.* at 44. More specifically, she agreed she "knowingly executed a scheme to get monies that didn't belong to [her] and that were under the custody of the bank by creating fictitious documents . . . with the intent to defraud." *Id.* Defendant then pled guilty to Count 1 of the indictment. *Id.* at 45.

Defendant was aware she was under oath at her change of plea hearing. *See id.* at 4-5 ("[B]y the oath that you have just taken, you have promised to answer my questions truthfully."). Her admissions as to the facts of her case undercut her current argument that she did not knowingly execute a scheme to defraud the financial institution. To the extent she alleges her attorney "was

6

aware and did not dispute this," Defendant remained responsible for testifying truthfully before the court and her statements to the contrary now are unavailing. *See Christian v. Ballard*, 792 F.3d 427, 444 (4th Cir. 2015) ("Representations made of the defendant, his lawyer, and the prosecutor at [a guity plea hearing . . . are] solemn declarations in open court [that] carry a strong presumption of verity and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contents that in the face of the record are wholly incredible.").

In addition, Fourth Circuit authority forecloses Defendant's argument challenging her conviction for defrauding a financial institution. *See Adepoju*, 756 F.3d at 254-55 ("A § 1344(2) conviction does not demand that the bank be the intended victim of the fraud; a person can violate the statute by obtaining funds from a bank while intending to defraud another person or entity."). Defendant was charged with and pled guilty to bank fraud under § 1344(2), and admitted her intent to defraud EveryWord and her use of the financial institution to do so. Therefore, she was properly convicted of this count and her attorney was not ineffective on this issue. The Government is entitled to summary judgment on this ground and it is dismissed with prejudice.

2. *Calculation of Restitution*

Defendant next alleges counsel was ineffective in failing to attempt to adjust her restitution amount. ECF No. 76 at 5. She claims credit was not issued "for monies held by the financial institution at time of closing accounts," and "the victim confirms he received $47,000" yet no change was made to her restitution requirement. *Id.* The Government notes Defense counsel did

7

object to the loss amount in the PSR, but withdrew the objection at sentencing. ECF No. 86 at 13. In her reply, Defendant states "it was not clear to me how restitution was determined . . . [I was] told by my attorney that unless I had something different he had to agree to the amount . . . [t]o which I agreed because per my attorney, I had to agree unless I could prove something different and I could not." ECF No. 90 at 2.

It is clear Defendant withdrew her challenge to the loss amount at sentencing. The court specifically inquired whether Defendant agreed to withdraw the objection. ECF No. 86-2 at 3. Further, the court notified Defendant "if you withdraw the objection, the amount of loss that is used to calculate the guidelines will remain as it is in the presentence report," and Defendant agreed. *Id.* Insofar as restitution, the court ordered restitution of $121,461.76, the same amount as the loss amount. This figure came from the total amount Defendant diverted to her personal account at Wells Fargo ($65,050.35) and the bogus EveryWord account at ASFCU ($56,411.41).

Defendant appears to claim a right to an offset for amounts "held by the financial institution at time of closing accounts" (possibly approximately $6,700: $56.411.41 - $44,574.06 + $5,158.23). She also contends the victim received $47,000 in reimbursement for which she should not be liable in restitution.[2]

---

[2] The Victim Impact Statement does indicate the victim has received $37,000 from a settlement with ASFCU and $10,000 from an insurance claim. ECF No. 67.

The Government responds "Defendant can receive credit if she identifies those funds and applies them towards restitution. The Government will entertain any claims that money being held should be applied to the restitution amount." ECF No. 86 at 14. However, the Government notes she "would not get credit for money paid by an insurer, since the insurer would need to be made whole as well." *Id.*

The court has inquired of the Probation Officer whether any offsets to the restitution amount are warranted and requested a determination as to the current party or parties to whom restitution is owed. Once the court receives Probation's report, an adjustment to the restitution amount will be made if warranted. Accordingly, Defendant is unable to show prejudice as a result of any alleged ineffectiveness of counsel on the issue of restitution. Therefore, the Government is entitled to summary judgment on this ground and it is dismissed with prejudice.

### 3. *Calculation of Guidelines and Sentence*

Next, Defendant argues her sentence was miscalculated because she should not have been enhanced two points for a "position of trust" at a financial institution, although she does admit to being in a position of trust at EveryWord.[3] However, it is not necessary that Defendant be in a

---

[3] In her reply, Defendant notes the PSR "contains information that is completely incorrect and misleading," and that these errors "were also brought to my attorney's attention and he failed to clarify them, once again ineffectively representing me." However, this accusation is also belied by Defendant's own statements at sentencing. The court questioned Defendant whether there was

position of trust at a financial institution in order for this enhancement to apply. It is clear her position as the bookkeeper at EveryWord "significantly facilitated the commission or concealment of the offense." *See* U.S.S.G. § 3B1.3.

To the extent Defendant alleges ineffective assistance of counsel regarding her eligibility for a half-way house, her counsel provided information available to him at the time that defendants were generally afforded 6-12 months of half-way house time. He could not have known, as Defendant asserts, that this policy would be affected by lack of funds. Regardless, as recognized by the Government, time in a half-way house is a matter within the province of the BOP. Finally, this court has no authority to "resentence [her] and allow [her] finish [her] sentence in home confinement." *See* ECF No. 90. Accordingly, the Government is entitled to summary judgment on this ground, and it is dismissed with prejudice.

    *4. Plea negotiations*

Finally, Defendant argues her attorney did not "give me options or discuss any possible defense or at least negotiate a better sentence. I felt he mearly [*sic*] communicated what the government wanted and agreed to everything." ECF No. 76 at 5. The Government contends "the

---

"anything else in the presentence report other than the issue of the amount that you disagreed with or thought was not correct in any way," and Defendant responded "No, ma'am." ECF No. 86-2 at 3. Defendant further agreed under oath the presentence report "as it now stands [at sentencing] is accurate." *Id.* at 4.

plea offer was the best offer the Defendant would get," because all counts carried the same penalty, she had no one to cooperate against, and a lesser charge was not a viable option. ECF No. 86 at 14. Defendant replies "this may have been the best plea offer available considering the government did not have all the facts and it was my attorney's reasonability to clarify this [sic] facts to the Government and if the government did not take these facts into consideration for a better plea, then advise the Judge at sentencing in an attempt for the Judge to deviate from the guidelines for a lesser sentence."[4] ECF No. 90 at 4.

Defendant pled guilty to one count of bank fraud out of a forty-six count indictment. Defense counsel objected to the loss amount, which would have lowered Defendant's guideline range; however, this objection was withdrawn with Defendant's agreement at sentencing. In addition, as noted above, Defendant testified under oath she knowingly participated in the fraud against EveryWord, and has presented no actual evidence, other than her inconsistent statement within this § 2255 motion, that she did not commit bank fraud. She does not, and cannot, point to any other offers made or even entertained by the Government, and does not contend she would have gone to trial absent her counsel's advice. *See Christian*, 792 F.3d at 443 ("To show prejudice

---

[4] The court notes Defense counsel did indeed request that the court impose a probationary sentence, which would have been a departure from the Guidelines, or that the court vary below the Guidelines and allow home detention. ECF No. 86-2 at 13-14. However, due to the facts of the case and the amount embezzled, the court declined and imposed a sentence at the low end of the guideline range. *Id.* at 16-17.

in the guilty-plea context, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Further, Defendant acknowledged while under oath she was fully satisfied with the "advice, counsel and representation [she] received so far in [her] case from [her] attorney." ECF No. 79 at 11. She agreed there was nothing she "asked her lawyer to do that he's failed to do," and nothing her "lawyer did that [she] disagreed with" or thought her lawyer should not have done. *Id.* at 11-12. She also acknowledged no one "made any promise or assurance to [her] or threatened [her] or coerced [her] or forced [her] in any way to get [her] to sign this plea agreement." *Id.* at 13.

Accordingly, the Government is entitled to summary judgment and Defendant's motion under § 2255 is dismissed with prejudice.

## CONCLUSION

For the reasons above, summary judgment for the Government is appropriate on all grounds. Defendant's motion is dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

    **IT IS SO ORDERED**.

                                                                                   s/Cameron McGowan Currie
                                                                                    CAMERON MCGOWAN CURRIE
                                                                                    Senior United States District Judge

Columbia, South Carolina
August 16, 2018